IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19 CR 248 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| DIONTAE HILL, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION TO SUPPRESS EVIDENCE |
| | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Patrick P. Burke, Assistant United States Attorney, and hereby responds in opposition to defendant Diontae Hill's motion to suppress evidence.

## I.  BACKGROUND

### A.  Additional Evidence

The government received additional relevant evidence after the defendant's Motion to Suppress Evidence was filed. The government received the Initial Incident Report (Attachment #1) from the Ohio State Highway Patrol, see Attachment 1, OSHP Report, on Friday, June 7, 2019, and immediately disclosed it to counsel for the defendant.  The government also obtained the link to the dashcam video footage from the Ohio State Highway Patrol, on the evening of June 13, 2019, which was also forwarded to counsel for the defendant in the morning of June 14, 2019.  The government has requested physical disks of the dashcam video footage and will provide to the defendant as soon as they are provided to the United States.

**B.  Factual Background**

On March 26, 2019, the defendant arrived at Cleveland Hopkins International Airport, and retrieved a suitcase from baggage claim.  He was picked up by an Uber driver, who placed the defendant's suitcase in the vehicle.  After leaving the airport, Ohio State Highway Patrol Trooper Brian M. McGill informed Sergeant Michael S. Trader that a black Mercedes driving in front of Trooper McGill had driven from the right lane into the left lane prior to activating a turn signal while driving northbound on S.R. 237.  OSHP Report, p. 7. Sergeant Trader conducted a traffic stop near 18930 Brook Park Road, in Cleveland, Cuyahoga County, Ohio at approximately 8:39 PM.   The Affidavit in Support of a Criminal Complaint prepared by TFO Agent Darren L. Stout contained a minor typo, stating that Sergeant Trader "initiated an investigative traffic stop at 13890 Brook Park Road, in Cleveland, Cuyahoga County, Ohio." Id. The correct address of the BP Gas Station, where the traffic stop was initiated and which the defendant referenced to in his Brief in Support of Defendant's Motion to Suppress Evidence is 18930 Brook Park Road, Cleveland, Ohio, Br. in Supp. of Def.'s Mot. Suppress Evid., 7, 10; OSHP Report, p. 7.

Sergeant Trader informed the driver of the reason for the stop and explained the law regarding activating a turn signal one hundred feet prior to moving left or right on a highway. OSHP Report, p. 7. The driver, (hereinafter "driver"), indicated that he was an UBER driver hired by the passenger, defendant Diontae Hill.

Sergeant Trader secured the driver in the patrol car and ran his personal information through his LEADS computer. OSHP Report, p.7. While doing so, Trooper McGill removed the defendant from the car and performed a free air sniff around the vehicle with his canine "Iso" at approximately 8:42 PM. Id. Positive alert was indicated by the canine and the officers executed a

probable cause search of the vehicle.  Officers discovered five kilograms of cocaine in the suitcase in the trunk of the vehicle.

The driver and the defendant were transported to the Ohio State Highway Patrol Cleveland Metro post along with the vehicle. The driver was released after investigation and interview. During the interview, the defendant denied ownership or possession of the suitcase that was found in the trunk.

Presently before this Court is the defendant's motion to suppress evidence that resulted from the vehicle search. For the reasons set forth below, the government believes the motion should be denied without a hearing.

## II.    ARGUMENT

### A.    Defendant's motion to suppress should be denied as the officers had probable cause to search the vehicle.

The Fourth Amendment protects "the right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. Where an officer has probable cause to believe a traffic violation has occurred, a stop of the vehicle in question does not violate the Fourth Amendment because there is nothing unreasonable about stopping a vehicle that has just committed a traffic offense.  Whren v. United States, 517 U.S. 806, 810 (1996).  "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Haynes, 301 F.3d 669, 678 (6th Cir. 2002) (citation and internal quotation marks omitted).  Determining whether probable cause existed at the time of the search is a "commonsense, practical question" to be judged from the "totality-of-the-circumstances."  Illinois v. Gates, 462 U.S. 213, 230 (1983).  "In determining whether probable cause exists, courts look to the objective facts known to the officers at the time of the search." Haynes, 301 F.3d at 678.

3

Following these precedents, in <u>United States v. Ferguson</u>, 8 F.3d 385, 391 (6th Cir. 1993) (en banc), the Sixth Circuit held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." <u>Id</u>. The Court went on to state that a traffic stop is reasonable if there was probable cause, it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop, and that "if the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's...conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual." <u>Id</u>. <u>See also</u> <u>United States v. Torres-Ramos</u>, 536, F.3d 542 (6th Cir. 2008) (a police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred).

Defendant argues that the government has failed to establish that an underlying traffic violation occurred because "the government has not provided dashcam video of the traffic stop to Mr. Hill [n]or does the government's report clearly identify what the nature of the alleged signal violation was." <u>Br. in Supp. of Def.'s Mot. Suppress Evid.</u>, 14. The government has now provided a link to the dashcam footage. In the Initial Incident Report from OSHP, Sergeant Trader indicated that the driver apologized, which implies that he was aware of his act of changing lanes without the proper use of a turn signal. <u>OSHP Report, p.7</u>.

In any case, the alleged failure to provide evidence is irrelevant because "probable cause is said to exist where an officer reasonably believes that an individual has committed a violation, even if in hindsight this was not the case." <u>United States v. Copeland</u>, 321 F.3d 582, 592-93 (6th Cir. 2003) (citing <u>Ferguson</u>, 8 F.3d at 391); <u>see also Klein v. Long</u>, 275 F.3d 544, 550 (6th Cir. 2001) ("Probable cause is assessed from the perspective of a reasonable officer on the scene,

4

rather than with the 20/20 vision of hindsight.") (quoting <u>Kostrzewa v. City of Troy</u>, 247 F.3d 633, 639 (6th Cir. 2001)).  The unavailability of dashcam footage to both the government and defendant at the time of his filing does not undermine the fact that Trooper McGill and Sergeant Trader conducted a lawful traffic stop.  The Troopers witnessed the driver violate a state traffic law, which gives the officers probable cause to conduct the traffic stop, thus making the defendant's lengthy list of elements to claim pretextual traffic stop moot.  Furthermore, the requested footage has now been received, and disclosed.

   **B.**     **Defendant's motion to suppress should be denied because there was no improper extension of the traffic stop.**

   In regards to improper extension of the traffic stop, defendant first argues, that "Trooper Trader pulled over the vehicle three miles from the location of the alleged traffic violation." <u>Br. in Supp. of Def.'s Mot. Suppress Evid.</u>, 8.  This is likely based on the incorrect address in the complaint affidavit.  The approximate distance from the violation to where the traffic stop was initiated, 18930 Broopark Rd., is, at most, one mile. <u>See Attachment 2, Google Maps Screenshot</u>.

   Furthermore, the dashcam footage shows that the pursuit was delayed due to numerous cars between the Mercedes and the troopers as well as traffic at a red light at a traffic intersection. In <u>United States v. Copeland</u>, 321 F.3d 582 (6th Cir. 2003), the Sixth Circuit reversed the district court's holding that the stop of defendant's vehicle one mile from the officers' observation of their parking violation did not give the officers probable cause. <u>Id</u>. The Court of Appeals held that stop of the defendants one mile from the parked location was reasonable because, during that time, the officers were conducting additional investigations and there was another vehicle between the cars of the defendants and the officers. <u>Id</u>. In this case, the police officers' attempt to stop the vehicle was obstructed by other cars as well as a red light.

The approximately one mile distance between infraction and traffic stop was reasonable given the circumstances.

Next, the defendant argues that Sergeant Trader, who initiated the stop, called in another trooper with a canine unit," Br. in Supp. of Def.'s Mot. Suppress Evid., 8, and, again, without mentioning how long the defendant had to wait for the canine unit to arrive, asserts that "[b]oth Mr. Hill and the driver of the Mercedes had to wait until the canine arrived to conduct the search." Id. To be sure, in order to detain the motorists beyond the purpose of the original traffic violation, the officer must have had a reasonable and articulable suspicion that criminal activity was afoot. United States v. Torres-Ramos, 536 F.3d 542 (6th Cir. 2008) (citing United States v. Hill, 195 F.3d 258 (6th Cir. 1999)); United States v. Blair, 524 F.3d 740 (6th Cir. 2008) (holding that the purpose of the initial stop ended when the officer had collected sufficient information to issue the citation for the initial traffic stop and ensuing detention violated the Fourth Amendment because the officers had not developed reasonable, articulable suspicion of criminal activity by that point); United States v. Perez, 440 F.3d 363 (6th Cir. 2006). Otherwise, the continued detention constitute an illegal seizure of the vehicle's occupants. Terry v. Ohio, 392 U.S. 1 (1968).

However, the investigative reports and the dashcam video show that the defendant is mistaken about the details of the timing of the canine sniff. According to the OSHP Report, it is clear that Trooper McGill and his canine partner, Iso, arrived at the scene almost simultaneously with Sergeant Trader at approximately 8:38 PM, and Trooper McGill stated that canine Iso executed a free air sniff around 8:42 PM. OSHP Report, p. 7. The dashcam footage shows that Sergeant Trader and Trooper McGill were traveling in tandem even before the pursuit was initiated, and the free air sniff by canine Iso was conducted within approximately 4 minutes of

the initiation of the traffic stop.  Thus, defendant's claim that the defendant had to wait until the canine arrived is incorrect.

Even if the defendant had to wait, the time it took for canine Iso to conduct a free air sniff was within a reasonable time during a lawful traffic stop allowed by the Supreme Court.  The defendant cites in his motion United States v. Rodriguez, 135 S.Ct. 1609 (2015), in which the Supreme Court stated that "[t]he Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention [and] [b]eyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license,…and inspecting the automobile's registration and proof of insurance." Id. at 1611. See also United States v. Garrido, 467 F.3d 971, 981 (6th Cir. 2006) (holding that officers had reasonable suspicion, based on information learned during the lawful stop, to detain the defendant for additional questioning beyond the 65 minutes it took to conduct a safety check of a vehicle and issue a $200 citation); Blair, 524 F.3d at 752 (6th Cir. 2008) (allowing detention of the passengers of a car subject to a traffic stop to an extent if "something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention") (quoting Perez, 440 F.3d at 370 (6th Cir. 2006)).

At the time of execution of the free air sniff, Sergeant Trader was still checking the driver's license through his LEADS computer. OSHP Report, p. 7. According to Trooper McGill's report in the same document, the air sniff happened at 8:42 PM, which is four minutes after the initiation of the traffic stop. Id.  At the time of the canine sniff, the investigators were still checking the driver's information.  Therefore, the four minute wait can hardly be considered an extension of a traffic stop.  Sergeant Trader had not yet completed the initial purpose of the

stop when the free-air sniff was executed.  Thus, claim of the defendant that Sergeant Trader prolonged the stop has no merit.

Additionally, the defendant raises the fact that "there is no indication from the report as to whether the trooper issued a warning ticket to the driver," Br. in Supp. of Def.'s Mot. Suppress Evid., 10, perhaps, in an attempt to undermine the legality of the traffic stop.  The fact that a ticket was never issued is irrelevant because air sniff that happened shortly after the lawful traffic stop gave probable cause and reasonable suspicion for the officers to conduct search of the vehicle. See Torres-Ramos, 536 F.3d 542 (6th Cir. 2008) (affirming district court's denial of defendants' motion to suppress evidence of cocaine because, despite the lack of issuance of a speeding ticket, the officer developed reasonable suspicion during the lawful stop after the driver acted nervously in response to the officer's questions, failed to provide the last name of the van's owner, and provided vague description of travel plans). In case at bar, the positive alert of canine Iso, gave the troopers probable cause to search the vehicle.

The defendant's claims on the distance between the infraction and traffic stop, as well as the time to begin the canine sniff are inaccurate, based on the information the United States recently received and disclosed.  There is nothing unreasonable about the distance between the infraction and traffic stop, or the approximately four minutes from the traffic stop until the canine sniff.

### C.  Defendant's motion to suppress should be denied because a passenger in a vehicle does not have standing to challenge the search.

Lastly, defendant claims that the driver nor the defendant consented to the search of the vehicle and the luggage in the trunk of the vehicle. Br. in Supp. of Def.'s Mot. Suppress Evid., 15, 16.  Consent of neither the driver nor the defendant was required because the troopers had probable cause to search after the canine gave a positive alert. See United States v. Collazo, 818

F.3d 247, 259 (6th Cir. 2016) ("An officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity.") (quoting United States v. Lyons, 687 F.3d 754, 770 (6th Cir. 2012); United States v. Haynes, 301 F.3d 669, 678 (6th Cir. 2002) ("Probable cause exists when there is a fair probability that contraband of evidence of a crime will be found in a particular place.").  Putting aside the fact that the defendant denied owning the suitcase in which the cocaine was found, and is now claiming that he never consented to the search of *his* luggage, the defendant, as a passenger, does not have standing to challenge the search of a vehicle in which he was a passenger that was lawfully stopped.

While passengers do have standing to challenge the constitutionality of the stop, Brendlin v. California, 127 S. Ct. 2400 (2007), they cannot challenge the search of a vehicle subject to a valid traffic stop. Illinois v. Rakas, 439 U.S. 128 (1978). In Rakas, the defendants were passengers in a vehicle during a traffic stop, wherin the police found a rifle and ammunition, of which the passengers subsequently denied ownership. Id. The Supreme Court held that passengers who asserted neither a property nor a possessory interest in the automobile searched nor an interest in the property seized, and who failed to show that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers, were not entitled to challenge a search of those areas.  Id.

Moreover, under the automobile exception, the police may search an automobile and the containers within it without a search warrant when they have probable cause to believe it contains contraband or evidence of criminal activity. California v. Acevedo, 500 U.S. 565, 580 (1991); see also United States v. Ross, 456 U.S. 798, 804-09 (1982). "So long as "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part* of the

vehicle and its contents that may conceal the object of the search."" <u>Carter v. Parris</u>, 910 F.3d 835, 840 (6th Cir. 2018) (quoting <u>Ross</u>, 456 U.S. at 825) (emphasis original). <u>See also United States v. Slater</u>, 209 Fed. Appx. 489, 496 (6th Cir. 2006) (holding that there was probable cause to search the trunk of a car when a drug-sniffing dog gave positive alert). This may include containers belonging to passengers. <u>Wyoming v. Houghton</u>, 526 U.S. 295 (1991).

Since probable cause was established as shown above, thus triggering the automobile exception, the officers were free to search the trunk of the vehicle *and* the luggage of the defendant in the trunk without the consent of either the driver or the defendant. But even if the consent was necessary, the defendant does not have standing to challenge the search because the defendant did not, and does not, have possessory rights to the vehicle Mercedes, or the suitcase to which he denied ownership.

## III.     CONCLUSION

For the foregoing reasons, the government respectfully requests that this Honorable Court deny Hill's motion to suppress evidence.  The government believes that the pleadings are sufficient for the Court to rule on the defendant's motion without a hearing.  In the alternative, the government would not oppose the defendant having an opportunity to reconsider filing his

motion once he has examined the evidence that was recently received and immediately disclosed by the United States.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Patrick P. Burke
      Patrick P. Burke (OH: 0082609)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3689
      (216) 522-7499 (facsimile)
      Patrick.Burke@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Patrick P. Burke
Patrick P. Burke
Assistant U.S. Attorney